### J. K. MINOR v. THE STATE.

No. 4092.   Decided May 19, 1909.

Rehearing denied June 1909.

**1.—Malicious Mischief—Evidence—Invited Error.**

Upon trial of willfully and maliciously poisoning a horse to injure the owner, there was no·error in admitting the evidence that chops or bran was found in prosecutor's cow lot where his horses were, and that the tracks of the horse rode there corresponded with the tracks of the one frequently used by the defendant; and where defendant requested a special instruction on this phase of the testimony, which was on the weight of the evidence, he could not complain.

**2.—Same—Charge of Court—Intent to Injure Owner.**

Where upon trial of malicious mischief there was no evidence to show a willful and wanton destruction of the life of the alleged animal, but that the intent was to injure the owner of the animal, the court correctly refused a charge to acquit the defendant if the act was simply a willful and wanton destruction of the animal without intent to injure the owner.

**3.—Same—Charge of Court—Requested Charge.**

Where the requested charges were substantially given in the main charge of the court, there was no error in failing to submit them.

**4.—Same—Evidence—Circumstances.**

Upon trial of willfully destroying the life of a horse to injure the owner, there was no error in proving by various witnesses the fact of finding chops in the prosecutor's lot.

**5.—Same—Evidence—Declaration of Defendant.**

Upon trial of willfully killing a horse to injure the owner, there was no error in admitting in evidence the statements of the defendant to the county attorney with reference to procuring the poison.

Appeal from the County Court of Hopkins.   Tried below before the Hon. T. J. Russell.

Appeal from a conviction of wilfully killing a horse; penalty, a fine of $200.

The opinion states the case.

*Leach & Allen,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of wilfully and maliciously poisoning and killing a horse, and his punishment assessed at a fine of $200.

The facts in substance show that appellant became angered at the prosecuting witness, Johnson, the owner of the horse, because said Johnson refused or failed to subscribe to some public enterprise in the neighborhood where he lived. About two weeks before prosecuting witness' horses died, one morning he got up and went to his horse lot, and found that someone had put a lot of bran in the horse lot during the night. Prosecuting witness, believing that the bran had poison in it, removed same from the lot. About two weeks after this occurred prosecutor hitched his horses to his wagon and carried his family to the town of Sulphur Springs to some character of show, remaining there after night. A druggist in the town of Sulphur Springs testified that he sold a man a small bottle of strychnine, the bottle containing a sufficient quantity to kill several horses. Prosecuting witness, prior to the purchase of this strychnine by appellant, had hitched his horses somewhere near the square, and a witness saw appellant coming from where the horses were hitched. In addition to this, appellant admitted, when accused by the county attorney, of having some complicity in this poisoning of prosecuting witness' horses—that he would not swear he did not buy the bottle of strychnine. Prosecuting witness testified that when his horses were having spasms he ran to where they were hitched, sent for a veterinary surgeon, and a short while after he reached the wagon both of his horses died. The veterinary swore that, in his opinion, they died from strychnine poison, though he concedes their symptoms were such as are frequently found in other diseases.

The court, after submitting the statute in reference to malicious mischief to injure the owner of an animal, charged on the law of circumstantial evidence, and also charged, at the instance of appellant, on the issue of alibi. Furthermore, at the instance of appellant the court charged the jury as follows: "You are instructed not to consider the testimony introduced in regard to chops being found in W. H. Johnson's cow lot, and horse and human tracks thereabout, unless you believe from the testimony, beyond a reasonable doubt, that the evidence connects the defendant therewith, and that poison was mixed with said chops, if any, and then only as a circumstance tending to show intent, and if you believe beyond a reasonable doubt that, some three weeks prior to the offense charged in this case, that the defendant placed said chops, if any, in the cow lot of W. H. Johnson, and that the same had poison therewith, and were placed there by the de-

fendant with the intent and purpose of poisoning said Johnson's stock, then you could not convict the defendant in this case on such testimony, but you must believe beyond a reasonable doubt, under the rules of law given you in the charge of the court, that the defendant is guilty of the offense charged in this case, before you would be justified in finding the defendant guilty." This charge is clearly a charge on the weight of evidence, but as appellant had invited the error he can not complain of same. The evidence going to show that someone placed chops in prosecutor's cow lot, where his horses were, and that the tracks of the horses rode there corresponded with the tracks of the one frequently used by appellant, was germane and legitimate testimony in the trial of this case. Appellant has a long bill of exceptions, complaining of the introduction of his testimony, and after its introduction presented to the court the above copied charge. There was no error in the admission of the testimony, and certainly none in giving the charge asked by appellant.

Appellant asked the court to charge the jury as follows: "You are instructed that it is an offense, under article 786 of the Penal Code, for anyone to wilfully poison and kill a horse with intent to injure the owner. It is also an offense, under article 787, Penal Code, for any person to wilfully or wantonly poison and kill a horse. You are, therefore, instructed that if the defendant did, in fact, poison and kill the horse charged, but you believe the same was not done with the intent to injure the owner, but was wilfully done or wantonly done, then you will go no further in your deliberations as to whether the defendant actually poisoned and killed said horse or not, but you will return a verdict of not guilty." This charge was not authorized by any evidence introduced in this case. There is no testimony going to show that appellant put the poison for the horses in some meal or bran, with the intent to wilfully and wantonly destroy the life of the horses, but all the testimony shows that it was done, as the indictment alleges, with intent to injure the owner of said horses. That the appellant placed the bran in the wagon, we take it, is very conclusively, from circumstances, established. Charge No. 2 complains in substance as charge No. 1.

The court, as stated above, charged on circumstantial evidence, and hence it was not necessary to give special charge No. 3, which presents this issue. Special charge No. 6 presents the doctrine of reasonable doubt. This issue was also given by the court in its main charge.

Bills of exception Nos. 1 and 2 complain of the introduction of the evidence by various witnesses about finding the chops in the prosecutor's lot. This question was passed on above. There were circumstances going to show appellant's guilty connection with the poisoning of the horses, for which he was prosecuted in this case. This testimony was clearly admissible.

Bill of exceptions No. 3 complains the State was permitted to prove

by John Ray, constable, over the objections of appellant, that a few days after the commission of the offense the appellant came into the county attorney's office, but witness did not remember whether he subpœnaed defendant to come before the county attorney or not, but did not think he did. That the county attorney told the defendant he was charged, or would be charged, with the offense; that he, the attorney, wanted to ask him some questions, and told him he did not have to answer them, that anything he said could be used against him on the trial of this cause, but not for him. The county attorney then asked him, defendant, if he purchased any strychnine from Dick Smith, at the Hopkins drugstore, on the day the offense was committed at night. The defendant then said: "Let me understand you, Clyde (addressing the county attorney); have you anyone to identify me as the man who bought the strychnine?" The county attorney told the defendant he did not know about that, but thought he did. Then defendant said, "No," and got up and went out, and was going down the stairs when the county attorney told witness to call defendant back. The witness called him to come back into the office, and the county attorney then asked the defendant if he, defendant, would make an affidavit that he, defendant, did not get any strychnine at the Hopkins drugstore on that day, and defendant replied he would not—that he was no fool. To which testimony appellant objected, on the ground that same was introduced as original and not impeaching testimony; that, after being warned, defendant did not want to make a statement, and refused to make a statement, as, under the law, he had a right to do; such refusal to make the affidavit would go before the jury as a circumstance against defendant, which was not a voluntary statement, or refusal, or circumstance he could not avoid, because using defendant's silence, and refusal to make affidavit, under circumstances which did not require him to speak, act or explain, as a criminative circumstance against him, was highly prejudicial to the rights of the defendant before the jury, forced defendant by his silence and refusal to make affidavit indirectly, to testify against himself, and against his consent forced a circumstance against him. This testimony was admissible. It clearly indicates that appellant answered a question, and did not merely remain silent, as appellant insists. Therefore, the cases cited, including the case of Denton v. State, 42 Texas Crim. Rep., 427; 60 S. W. Rep., 670, are not in point.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied.—Reporter.]